UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEASEPOINT FUNDING GROUP,
LLC,

    Plaintiff,

v.                                                                 Case No: 8:20-cv-2038-CEH-TGW

OSTEOPOROSIS &
RHEUMATOLOGY CENTER OF
TAMPA BAY, LLC, *et al*.,

    Defendants.
_____/

OSTEOPOROSIS &
RHEUMATOLOGY CENTER OF
TAMPA BAY, LLC, *et al*.,

    Third-Party Plaintiffs,

v.

CYNOSURE INC., a Delaware
Corporation, *et al*.,

    Third-Party Defendants.
_____/

**ORDER**

This matter comes before the Court on Third-Party Defendant Cynosure LLC's ("Cynosure") second Motion to Transfer Venue[1] under 28 U.S.C. § 1404(a). Doc. 36.

---

[1] The first Motion to Transfer Venue (Doc. 27) was denied for failing to comply with Local Rule 3.01(g). Doc. 33.

In support of its motion, Cynosure states the Customer Purchase Agreements ("Purchase Agreements") between it and Third-Party Plaintiff, Osteoporosis & Rheumatology Center of Tampa Bay, LLC, ("O&R Center") contain a forum-selection clause requiring O&R Center's claims to be brought in Boston, Massachusetts. Doc. 36 at 2. In response to the motion, O&R Center, Jeffrey Miller, M.D., P.A. ("Miller Medical"), and Jeffrey Miller ("Dr. Miller") (collectively "Defendants" or "Third-Party Plaintiffs") argue transfer should be denied because their single claim for fraudulent inducement falls outside the scope of the forum-selection clause. Doc. 47 ¶ 1. Third-Party Plaintiffs reply that forum-selection clauses are to be construed broadly, and thus, the scope of the clause should include a claim of fraudulent inducement. Doc. 61 at 2. The Court, having considered the motion and being fully advised in the premises, will grant Third-Party Defendant Cynosure LLC's Motion to Transfer Venue under 28 U.S.C. § 1404(a) and transfer the third-party action to the United States District Court for the District of Massachusetts. Also pending are motions to stay discovery (Docs. 64, 65) which the Court will deny as moot.

I.   BACKGROUND

   A.   Procedural and Factual Background

The primary action was initiated by Plaintiff, LeasePoint Funding Group, LLC, ("LeasePoint"), on August 31, 2020, when LeasePoint sued Defendants/Third Party Plaintiffs alleging breach of contract, breach of guaranty, and replevin due to Third-Party Plaintiffs' alleged failure to make payments on two equipment financing

agreements. Doc. 1. The financing agreements[2] were for two pieces of Cynosure equipment (CynoSure TempSure and CynoSure SculpSure). *Id*. ¶¶ 8, 29. O&R Center entered into the financing agreements with LeasePoint on February 21, 2020, and the Miller Defendants executed personal guaranties. *Id*. ¶¶ 8–10, 29–31.

  Third-Party Plaintiffs answered LeasePoint's Complaint and filed a third-party action against Cynosure, Hologic, Inc. and Marissa Hill (collectively "Third-Party Defendants"). Doc. 19. The Third-Party Complaint asserts one claim against Third-Party Defendants for fraudulent inducement. *Id.* Third-Party Plaintiffs allege that prior to February 21, 2020, they were engaged in negotiations with Third-Party Defendants to purchase equipment sold by Cynosure. *Id.* at 9, ¶ 1. In conjunction with the negotiations for the purchase of the equipment, Third-Party Plaintiffs were told by Third-Party Defendants that they would receive 30 referrals per month and that their medical staff would receive training on the proper use of the equipment. *Id.* at 9, ¶ 9. Third-Party Defendants made these representations to induce Third-Party Plaintiffs to enter into the Purchase Agreements[3] with Third-Party Defendants. *Id.* at 9, ¶ 10. Third-Party Plaintiffs relied on these representations when entering into the Purchase Agreements with Third-Party Defendants. *Id.* at 9, ¶ 12. Third-Party Defendants failed to provide referrals or training. *Id.* As a result, Third-Party Plaintiffs allege they suffered lost business and actual damages. *Id.* at 10, ¶ 15.

---

[2] Cynosure is not a party to the financing agreements. Doc. 1-1.
[3] LeasePoint is not a party to the Purchase Agreements. Doc. 36-2.

On February 1, 2021, Third-Party Plaintiffs filed an Amended Third-Party Complaint. Doc. 49. Third-Party Plaintiffs allege that Third-Party Defendants made material representations in which they promised referrals, training, marketing support, and payment deferrals to induce Third-Party Plaintiffs to enter into the Purchase Agreements. *Id.* at 2–3. Third-Party Plaintiffs relied on these representations, and, as a result, they entered into the Purchase Agreements with Cynosure and the finance agreements with LeasePoint. *Id.* at 3. Despite Third-Party Defendants' representations, they never followed through on their promises, and Third-Party Plaintiffs were damaged and suffered business losses as a result. *Id.*

On January 19, 2021, Cynosure moved to transfer the third party action to a district court in Massachusetts on the basis that the Purchase Agreements between Third-Party Plaintiffs and Cynosure contain a forum selection clause dictating that any action related to the Purchase Agreements must be brought in a court in Boston, Massachusetts. Doc. 36. Third-Party Plaintiffs do not dispute that the Purchase Agreements include a forum-selection clause but deny that it applies to their claim for fraudulent inducement. Doc. 47 ¶ 8.

###   B.   Forum-Selection Clause

Attached to Cynosure's Motion to Transfer Venue are copies of the Purchase Agreements dated December 23, 2019. Doc. 36-2 at 5–6, 8–9. The Purchase Agreements were for the purchase of Cynosure SculpSure and Cynosure TempSure. *See id.* The "Customer" identified in the Purchase Agreements is O&R Center and the

Purchase Agreements are signed by Dr. Miller. *Id.* at 5, 8. The second page[4] of the Purchase Agreements includes the following paragraph:

> The Agreement shall be governed by and construed under the substantive laws of the Commonwealth of Massachusetts. The Customer agrees to submit all disputes arising out of, or relating to, this Agreement to a Court in Boston, Massachusetts.

*Id.* at 6, 9.

## II. LEGAL STANDARD

In relevant part, § 1404(a) states that "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). However, unlike traditional analysis under the general venue statute, a contracted-for provision that designates the court or jurisdiction for disputes requires interpretation under the "rules governing the enforcement of contracts in general." *P & S Business Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807–08 (11th Cir. 2003). Such provisions, known as forum-selection clauses, are presumptively valid and should be enforced unless the challenging party makes a strong showing that enforcement would be unreasonable under the circumstances. *Rucker v. Oasis Legal Finance, LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011). That is because "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations

---

[4] It is unclear whether the forum selection clause appears on page 2 of the Agreement or on the back of the first page.

and furthers vital interests of the justice system." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (internal quotation marks omitted).

### III. DISCUSSION

The Purchase Agreements that O&R Center entered into with Cynosure for the purchase of two pieces of Cynosure equipment included forum-selection clauses designating Boston, Massachusetts as the venue for all disputes arising out of, or related to, the Purchase Agreements. Doc. 36-2 at 6, 9. When parties have agreed to a valid and mandatory forum-selection clause, a district court must transfer the action to the specified forum, unless "extraordinary circumstances unrelated to the convenience of the parties" exist. *Atl. Marine*, 571 U.S. at 59. Forum-selection clauses may be enforced through 28 U.S.C. § 1404(a), but the presence of a forum-selection clause changes the court's usual § 1404(a) analysis in three ways. *See Atl. Marine*, 571 U.S. at 51, 62. First, the plaintiff's choice of forum carries no weight, and the plaintiff has the burden of establishing that forum transfer is unwarranted. *Id.* Second, the court may only consider public interests and should not consider the private parties' interests. *Id.* "The practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

### A.  Forum-Selection Clause is Valid

In order to determine whether a § 1404(a) transfer is proper a court must first determine that the underlying forum-selection clause is valid. "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong

6

showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (internal quotations omitted).

Third-Party Plaintiffs argue that the forum-selection clause is invalid because it was the result of fraud. Doc. 47 ¶ 7. Third-Party Plaintiffs rely on *Carrigg v. General R.V. Center*, for the proposition that fraud can invalidate a forum-selection clause. *Id.*; *See Carrigg v. Gen. R.V. Ctr., Inc.*, No. 3:18-CV-654-MMH-PDB, 2018 WL 5904447 (M.D. Fla. Nov. 9, 2018).

This Circuit has held that in order to invalidate a forum-selection provision for fraud, it must be alleged that the forum-selection clause itself was the result of fraud. *Rucker v. Oasis Legal Fin., LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011). As Third-Party Defendants note, *Carrigg* supports this distinction. "The fraud or overreaching that is grounds to deny enforcement of a forum-selection clause pertains to the incorporation of the clause itself." *Carrigg*, 2018 WL 5904447 at *7 (quoting *EWT Holdings, Corp. v. Progressive Glob. Techs. Inc.*, No. 06-80054-CIV-DIMOTREOULAS-TORRES, 2006 WL 8433634 (S.D. Fla. May 26, 2006)); Doc. 61 n.3. Third-Party Plaintiffs do not allege that the forum-selection clause itself was the result of fraud. Doc. 49. Therefore, the Court finds this argument to be unavailing to support a finding of invalidity.

Third-Party Plaintiffs also claim that the clause is "inconspicuous" because it is "potentially on the back of the [Purchase] [A]greement[s]." Doc. 47 at 2. Based on the Court's review of the Purchase Agreements filed in the court docket, it is unclear whether the forum-selection clause appears on the back of the Purchase Agreements

7

or on the second page of the Purchase Agreements. *See* Doc. 36-2 at 6, 9. Third-Party Plaintiffs do not cite any other facts to support this contention nor do they direct the Court to any authority to support their argument. Doc. 47. In any event, it is unlikely, that the clause's appearance on the back of the Purchase Agreements alone is enough to invalidate it.

In *Krenkel*, the Eleventh Circuit upheld as valid a forum-selection clause contained within a document that had "only eight paragraphs, was set apart in a separate paragraph, was in legible type in the same font and type size as the surrounding paragraphs, and began with the words I agree." *Krenkel*, 579 F.3d at 1281. (internal quotations omitted). Here, the forum-selection clause is on one page of terms, in an agreement only two pages long, is set apart in a separate paragraph, and is the same size font as the surrounding paragraphs. Doc. 36-2 at 6, 9. Third-Party Plaintiffs fail to show that the clause is inconspicuous so as to overcome the presumption that a forum-selection clause is valid. *See Krenkel*, 579 F.3d at 1282.

Having found the forum-selection clause at issue here to be valid, the Court next turns to the issue of whether the forum-selection provision is mandatory or permissive. A mandatory forum-selection clause "dictates an exclusive forum for litigation under the contract." *E-Core IT Sols., LLC v. Unation, LLC*, No. 8:14-CV-927-VMC-TGW, 2014 WL 3586501, at *2 (M.D. Fla. July 8, 2014) (*quoting Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)). "A permissive [forum-selection] clause authorizes jurisdiction in a designated forum but does not prohibit litigation

elsewhere." *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004).

As noted above, the forum-selection clause contained in the Purchase Agreements between Cynosure and Third-Party Plaintiffs state: "The Customer agrees to submit all disputes arising out of, or related to, this agreement to a court in Boston, Massachusetts." Doc. 36-2 at 6, 9. The Eleventh Circuit has held that the phrase "all disputes" is sufficient to create a forum-selection clause that is mandatory. *See DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1316 (11th Cir. 2020). A plain reading of the Purchase Agreements here leads to the same conclusion. The phrase "agrees to submit all disputes" is not equivocal or discretionary, and the Court will hold the parties to their contractual bargain.

### B. No Extraordinary Circumstances Exist to Prevent Transfer

When a valid forum-selection clause is present, the case should be transferred unless "extraordinary circumstances unrelated to the convenience of the parties" exist. *Atl. Marine*, 571 U.S. at 62. "The practical result is that forum-selection clauses should control except in unusual cases." *Id.* When there is a forum-selection clause the court should not take into account the convenience of the private parties and only consider the public interests. *Atl. Marine*, 571 U.S. at 51.

The public factors to consider include "the administrative difficulties flowing from court congestion [and] the local interest in having localized controversies decided at home." *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1049 (11th Cir. 2019)

9

(quoting *Piper Aircraft Co. v. Reyno* 454 U.S. 235, 241 n. 6 (1981)) (internal quotation marks omitted). This Circuit has also considered the chosen forum's familiarity with the governing law. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

The public interest factors here do not constitute extraordinary circumstances to preclude transfer. First, as Third-Party Defendants observe in their motion to transfer venue, this District is one of the busiest in the country and the District of Massachusetts has a comparatively smaller case load. Doc. 36 at 9. Moreover, the District of Massachusetts currently has several other cases pending before it against Cynosure concerning the same type of medical equipment. *Id.* at 8. The Agreements here have a choice-of-law provision that applies Massachusetts law to the Agreements. Doc. 36-2 at 6, 9. Thus, judicial congestion, general judicial economy, and familiarity with substantive law all weigh in favor of transfer. *See Fresh Results*, 921 F.3d at 1049.

Third-Party Defendants also argue that this is "not a purely localized controversy because [Third-Party Defendants] are a Massachusetts based business." Doc. 36 at 8. Third-Party Plaintiffs respond that the localized interest weighs in favor of keeping the action here because the manner in which Third-Party Defendants conduct business is "of direct impact to the medical community within this district." Doc. 47 ¶ 13. Although Third-Party Plaintiffs fail to cite other instances of Third-Party Defendants' actions impacting the medical community in this district, at least one district judge has transferred a similar matter involving Cynosure based on the same forum-selection clause at issue in this action. *See* Doc. 36-1. Moreover, Third-Party Plaintiffs fail to direct the Court to any authority or to demonstrate how the claimed

10

impact on the medical community creates "an extraordinary circumstance" that would render transfer improper. *Atl. Marine*, 571 U.S. at 62. Therefore, considering the public interest factors outlined by the Eleventh Circuit, transfer to Boston, Massachusetts is proper. *See Fresh Results*, 921 F.3d at 1049.

Finally, Third-Party Plaintiffs argue that even if the forum-selection clause is valid, its application would not include a claim for fraudulent inducement. Construction of forum-selection clauses is governed by federal law in diversity actions. *See P & S Bus. Machs.*, 331 F.3d at 807 (11th Cir. 2003) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)). The plain meaning of a forum-selection clause governs its interpretation. *See Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011).

Courts in this Circuit have held that forum-selection clauses are "broadly construed to effectuate an orderly and efficient resolution of all claims arising between the parties to a contract." *Pods, Inc. v. Paysource, Inc.*, No. 8:05-cv-1764-JDW-EAJ, 2006 WL 1382099, at *2 (M.D. Fla. May 19, 2006) (*citing Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987)). The purpose of this is to "promote enforcement of those [forum-selection] clauses consistent with the parties' intent." *Pods*, 2006 WL 1382099 at *2.

The applicable forum-selection clause requires O&R Center to "submit all disputes arising out of, or related to, this Agreement to a court in Boston, Massachusetts." Doc. 36-2 at 6, 9. A plain reading of the clause includes claims that are not directly tied to the contents of the Purchase Agreements. A reasonable

11

understanding of the phrase "related to" would include a claim that the "Customer" was fraudulently induced into entering the Purchase Agreements.

The Eleventh Circuit has read similarly worded forum-selection clauses broadly and has held such clauses to apply to claims of fraud. In *Stewart*, the forum-selection clause read "*any* case or controversy arising under or in connection with this Agreement." *Stewart*, 810 F.2d at 1070. The court held this phrase "includes all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Id*. The operative phrase in *Stewart*, "in connection with" is analytically synonymous with the phrase at issue here "related to." Thus, the forum-selection clause in this action should encompass "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Id*. As the *Stewart* court held, this would include claims that the Agreement was fraudulent or that one party was fraudulently induced to enter the Agreement. *Stewart*, 810 F.2d at 1070–71.

Third-Party Plaintiffs attempt to distinguish *Stewart* by claiming the forum-selection clause there was invalid and there was no claim of fraud. Doc. 47 ¶ 9. Their arguments are unpersuasive. On appeal, the Eleventh Circuit held the clause was valid, reversing the district court's finding to the contrary. *Stewart*, 810 F.2d at 1070.

Third-Party Plaintiffs argue the scope of the forum-selection clause does not include a claim of fraudulent misrepresentation for two reasons. First, they argue the misrepresentations occurred in the discussions prior to signing the Purchase Agreements and were not included in the Purchase Agreements. Doc. 47 ¶ 2. This does not change the subject matter of the alleged misrepresentations. Third-Party

12

Plaintiffs allege they were promised deferred billing, client referrals, training, and marketing support. Doc. 49 ¶ 10–11. These promises relate to and arise out of the Purchase Agreements for the equipment. While these alleged misrepresentations were not memorialized in the Purchase Agreements, they arise, at least in part, "indirectly from the business relationship evidenced by the contract." *Stewart*, 810 F.2d at 1070. Without the underlying Purchase Agreements for the equipment, there would be no allegations that there were promises made to support the use of that equipment.

Second, Third-Party Plaintiffs cite two state law cases to argue that fraudulent inducement is "an independent tort" and "require facts separate and distinct" from a breach of contract claim. Doc. 47 ¶ 3. It appears Third-Party Plaintiffs are relying on these cases for the proposition that a fraudulent inducement claim is not related to the underlying Purchase Agreements. However, the state court opinions are inapposite as neither involve forum-selection clauses or the federal venue transfer statute. *See HTP, Ltd. v. Lineas Aereas Costarricenses*, S.A., 685 So. 2d 1238 (Fla. 1996); *Williams v. Peak Resorts Int'l Inc.*, 676 So. 2d 513 (Fla. 5th DCA 1996). Thus, the Court finds Third-Party Plaintiffs' argument that the claim of fraudulent inducement is outside the scope of the forum-selection clause to be unpersuasive.

Accordingly, it is hereby

**ORDERED:**

1. Third-Party Defendant Cynosure LLC's Motion to Transfer Venue under 28 U.S.C. § 1404(a) (Doc. 36) is **GRANTED**.

2. The third-party action is hereby **TRANSFERRED** to the United States District Court for the District of Massachusetts, Boston Division.

3. The Clerk is directed to transfer copies of all pleadings related to the Third-Party Claims to the United States District Court for the District of Massachusetts, Boston Division.

4. The Clerk is directed to terminate the Third-Party Defendants, Cynosure, Inc.; Hologic, Inc., and Marissa Hill, as parties to this action and to update the caption accordingly.

5. The Clerk is further directed to terminate the pending motions to dismiss at Docs. 53 and 54.[5]

6. The Third-Party Defendants' Motions to Stay Discovery (Docs. 64, 65) are **DENIED as moot**.

**DONE AND ORDERED** in Tampa, Florida on July 26, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any

---

[5] The Court makes no findings as to Third-Party Defendants' motions to dismiss (Docs. 53, 54) leaving those motions to be decided by the transferee court, but the motions should be terminated as pending in this action.