UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OSTEOPOROSIS & RHEUMATOLOGY CENTER OF TAMPA BAY, LLC; JEFFREY MILLER, MD PA; and JEFFREY MILLER<br><br>Plaintiffs,<br><br>v.<br><br>CYNOSURE, INC. and HOLOGIC, INC.<br><br>Defendants. | Case No. 21-CV-11233-AK |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS**

**A. KELLEY, D.J.**

This is a civil fraud case that is an offshoot of a larger, and since resolved, action that originated in the Middle District of Florida. Plaintiffs here are three Florida-based healthcare providers: the Osteoporosis and Rheumatology Center of Tampa Bay, LLC; the medical practice of Dr. Jeffrey Miller; and Dr. Miller in his individual capacity (collectively, "Plaintiffs"). These three parties were sued in Florida for breach of a loan contract, and, in turn, asserted third-party claims against Defendants Cynosure, Inc. and its former parent company Hologic, Inc. (collectively, "Defendants"), alleging that Defendants' fraudulent conduct caused Plaintiffs to breach their loan contract. Because a forum selection clause in the contract between Plaintiffs and Defendants identifies Boston as the forum for litigation, this portion of the Florida-based action was transferred to this Court.

1

Defendants have each moved to dismiss this action for failure to state a claim. Because Plaintiffs have not stated a claim of fraud in the inducement with the particularity required by the Federal Rules of Civil Procedure, those motions will be **GRANTED** and the action will be **DISMISSED** without prejudice.

I. **FACTUAL & PROCEDURAL BACKGROUND**

In 2019, Plaintiffs contracted to purchase two medical devices from Cynosure, the SculpSure Non-Invasive Body Contouring Platform and the TempSure RF System. Each of these devices has cosmetic medical applications, including removal of fat deposits, reduction of cellulite, and tightening of skin. Plaintiffs and Cynosure executed two written purchase and sale contracts on December 23, 2019, which selected Boston as the place of litigation for all disputes arising from the contracts.

Plaintiffs secured funding for their purchases from Cynosure through a loan from Leasepoint Funding Group, LLC ("Leasepoint"). In August 2020, after Plaintiffs failed to make payments in accordance with their loan contract with Leasepoint, Leasepoint initiated this action in the Middle District of Florida, bringing several contract-related claims against Plaintiffs.[1] Plaintiffs timely impleaded both Cynosure and Hologic, and later amended its third-party complaint against both Defendants. Defendants moved both to dismiss Plaintiffs' complaint and, per the forum selection clause, to transfer the action to this Court. Without taking action on the motions to dismiss, the Middle District of Florida granted the motion to transfer.

II. **DISCUSSION**

---

[1] The action between Leasepoint and Plaintiffs has since resolved.

### A. Pleading Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

In addition to meeting the general pleading requirements of Rule 12(b)(6), claims of fraud must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b).  The purpose of this heightened pleading requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discover."  Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).  The complaint must "specify[] the false statements and by whom they were made" and "identify[] the basis for inferring scienter"; further, it must also set forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." North Am.

Catholic Educ. Prog. Fdn., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J.)).

### B. Florida Fraud in the Inducement Law

Here, Plaintiffs assert one count of fraud in the inducement against both Defendants. All parties agree that this claim arises under Florida law. To prevail on a Florida law claim of fraud in the inducement, Plaintiffs must demonstrate: (1) that a misrepresentation of material fact occurred; (2) that the Defendants knew or should have known of the statement's falsity; (3) that the Defendants intended the Plaintiffs to rely on the misrepresentation; and (4) that the Plaintiffs suffered injury in reliance on the representation. Democratic Rep. of the Congo v. Air Cap. Grp., LLC, No. 12–20607–CIV, 2013 WL 3223688 at *3 (S.D. Fla. June 24, 2013); (citing Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010)).

However, as a threshold matter, a plaintiff bringing a fraud in the inducement claim related to the formation of a contract must first establish that its claim is distinct from a claim from breach of the contract itself. The Florida Supreme Court has repeatedly held that fraud in the inducement "is an independent tort in that it requires proof of facts separate and distinct from the breach of contract." Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc., 110 So.3d 399, 402 (Fla. 2013) (quoting HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla. 1996)). In other words, a party may not package a bona fide breach of contract claim as a fraud in the inducement tort claim in order to seek tort remedies instead of the contractually available remedies. Judicial maintenance of this distinction between tort and contract actions is necessary to avoid rending the parties' contract—and specifically, their agreed-to remedies for nonperformance of the contract—a nullity. As Justice Pariente explained in her concurrence in

Tiara Condominium, "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." 110 So.3d at 409 (Pariente, J., concurring) (quoting Indemnity Ins. Co. v. American Aviation, Inc., 891 So.2d 532, 542 (Fla. 2004)); see also Osan v. Verizon Fla. LLC, No. 8:15-cv-104-T-36TGW, 2016 WL 2745001 at *4 (M.D. Fla. May 11, 2016) ("Permitting [Plaintiff] to bring his breach of contract claim as a claim for fraud in the inducement would allow him to unfairly circumvent the negotiated remedies in the Agreement.")

Thus, when plaintiffs have brought Florida law fraud in the inducement claims in federal court, courts have consistently examined both the contract at issue and the facts pled in support of the fraud allegation to determine whether the claim for fraud is based in facts independent of those which would support a claim for breach of the contract. The critical inquiry in this examination is "whether the alleged fraud is separate from the *performance* of the contract." Kaye v. Ingenio, Filale De Loto-Quebec, Inc., No. 13-cv-61687, 2014 WL 2215770 at *5 (S.D. Fla. May 29, 2014). Where the court determines that a claim of fraud is "precisely the same as a potential breach of contract claim," it must dismiss the claim. Osan, 2016 WL 2745001 at *4.

Three recent decisions of the federal district courts of Florida are illustrative. First, in Osan, a retired union worker sued his former employer pursuant to a collective bargaining agreement which permitted workers to "bank" up to two vacation weeks per year and carry this earned time over to future years. 2016 WL 2745001 at *1. At the time of the plaintiff's separation, he had banked over 2,600 hours of vacation time, which was worth approximately $70,200. Id. The plaintiff had separated pursuant to an individual separation agreement providing a lump-sum payment, and the parties disputed whether the employer owed the plaintiff any additional money to account for his banked vacation time. Id. The plaintiff sued for fraud in

5

the inducement, arguing that "he was told prior to entering into the separation agreement that his separation payment would include his banked vacation hours, and he relied on that representation in deciding to enter into the separation agreement." Id. at *4.

The district court applied the rule of Tiara Condiminium to dismiss this fraud claim. Accepting as true, for purposes of considering the defendant's motion to dismiss, the plaintiff's argument that the defendant had fraudulently promised to pay him for his banked vacation time, the court found that "the terms of the purported fraud were a part of the separation agreement … so any failure to comply with those terms properly results in an action for breach of contract." Id. Thus, the plaintiff's position that he had relied on this allegedly fraudulent promise in deciding to enter into the contract did not create grounds to sue in tort: under Florida law, his remedy for alleged non-performance of the contract lay were the arbitration and grievance procedures he had agreed to in the contract itself. See id.

Likewise, in Kaye, an inventor sued a company to which he had contractually assigned patent rights via a licensing agreement. 2014 WL 2215770 at *1. The plaintiff argued that the defendant had "procured the assignment of the Patents by promising [plaintiff] a license that could be used and enforced;" however, the defendant had "never intended to allow" the plaintiff to exercise his enforcement rights, and the plaintiff was thus fraudulently induced into selling the patents in exchange for an unenforceable license. Id. at *3. As in Osan, the district court dismissed the fraud claim, finding that the alleged fraudulent representation (the right to enforce the patents against alleged infringers) was "a right specifically embodied" within the terms of the contract. Id. at *5. Further, the court found that if the plaintiff succeeded on a breach of contract claim, he would receive "full anticipated value of his bargain, despite a purported fraud." Id.

6

Accordingly, the court found that the fraud claim did not rest on facts "separate and distinct" from those of a potential breach of contract claim.  See id.

Conversely, in Freeman v. Sharpe Resources, No. 6:12-cv-1584, 2013 WL 2151723 (M.D. Fla. May 16, 2013), the district court denied a motion to dismiss a fraud in the inducement claim because it found that most of the alleged fraudulent representations were not "inextricably intertwined with performance of the Agreement." Id. at *8.  The contract in this case concerned coal mineral rights, and the plaintiff alleged that the defendant had made false statements concerning, *inter alia*, the defendant's ownership of the mineral rights, the value of these rights, the amount of coal that covered mines could produce per month, a third party's previous negotiations with the defendant concerning these rights, and prior complaints made against the defendant.  See id. at *5.  Because these allegedly fraudulent statements were "grounded in the genesis of the parties' understanding and agreement" rather than in the terms of the contract itself, the court found that they were sufficiently separate from the parties' performance of the contract to support a tort action independent of a breach of contract action.  See id. at *8.

### C.  Application

Turning to the instant complaint, Plaintiffs have not adequately pled, in satisfaction of Rule 9(b)'s heightened standard, a claim for fraud in the inducement against either defendant that is distinct from a claim for breach of contract.  Plaintiffs cite the following representations and actions of Defendants in support of their claim:

- Defendants told Plaintiffs that "30 referrals a month" would be given after execution of the purchase contract
- Plaintiffs' "medical staff would be trained on how to use the equipment"
- "Training was to be provided" to Plaintiffs.
- "Marketing support was to occur."

[Amended Third Party Complaint ("Compl."), Dkt. 49, at ¶¶ 10, 12, 14].

Defendants argue that, with the exception of the allegation concerning Defendants' promise to make "30 referrals a month," each of the alleged misrepresentations Plaintiffs cite in the complaint was memorialized as a term in one or more of the parties' contracts, and is thus actionable through a breach of contract action rather than a tort action.  A review of the contracts supports Defendants' reading.  The parties' contract for Plaintiffs' purchase of the SculpSure, [Dkt. 29 at 4–5], includes a "Marketing Package" and "2 day clinical in-service," a term of art that Defendants argue—and Plaintiffs do not contest—refers to training, [Cynosure's Motion to Dismiss, Dkt. 96, at 6].  Likewise, the contract for Plaintiffs' purchase of the Tempsure includes "clinical in-service" and a "Marketing Kit" consisting of "marketing material support."  [Dkt. 29 at 7–9].  Accordingly, the rule of Tiara Condominium prevents Plaintiffs from pursuing a tort claim in relation to any of Defendants' alleged promises concerning training or marketing support.  Both contracts explicitly create training and marketing obligation on Defendants—obligations that, if unfulfilled, could give rise to a breach of contract action.  Further, Plaintiffs' complaint does not contain precise allegations sufficient to state a claim—under the heightened pleading standard of Rule 9(b)—that Defendants promised training or marketing support in excess of the training and marketed support anticipated by the contract.  Accordingly, any fraud in the inducement claim rooted in statements concerning training or marketing is "inextricably intertwined" with a claim for breach of the training and marketing provisions of the contract, and cannot sound independently in tort.

Thus, Plaintiffs' only potential avenue to state a claim for fraud in the inducement is through its allegation that Defendants promised to make "30 referrals a month" at the time the parties entered into the contracts.  Although this promise is not embodied within any term of

either of the parties' contracts, it too is insufficient to state a claim for fraud under the heightened pleading standard of Rule 9(b).  The First Circuit has specified three factors a complaint must satisfy in order to survive a motion to dismiss under this standard: it must "specify[] the false statements and by whom they were made"; "identify[] the basis for inferring scienter"; and set forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."  Cardinale, 567 F.3d at 13.  Although Plaintiffs' complaint identifies the employee of Defendants who made the alleged promise to give "30 referrals a month," [Compl. ¶¶ 10, 15], it neither identifies the basis for inferring scienter, nor does it provide specific facts that make it reasonable to believe Defendants knew this promise of "30 referrals a month" was false or misleading.  Indeed, the complaint states no facts at all concerning the context of this statement, nor does it provide any thread by which the Court may divine from this statement an unlawful intent to mislead Plaintiffs into purchasing equipment.  The Court cannot speculate as to why Plaintiffs did not, if they materially relied on a promise of a number of referrals per month as a condition to their assent to purchase, request that a term concerning referrals be included in either purchase agreement before signing, and it likewise cannot permit a claim of fraud to proceed on these threadbare allegations that do not approach the requirements of Rule 9(b).

### III.   CONCLUSION

Because Plaintiffs have failed to state a claim upon which relief can be granted, the Court takes no action on the question of whether Hologic is a party to either of the purchase contracts between its former subsidiary Cynosure and Plaintiffs.  [See Dkt. 99 at 3–5].  Defendants' motions to dismiss are **GRANTED** and the Complaint is **DISMISSSED** without prejudice.

**SO ORDERED.**

September 13, 2022 /s/ Angel Kelley
ANGEL KELLEY
U.S. DISTRICT JUDGE